■ In the Matter of BETHPAGE WATER DISTRICT, Appellant, v RICHARD F. DAINES, as Commissioner of Health, et al., Respondents. [888 NYS2d 273]—

Spain, J.P. Appeal from a judgment of the Supreme Court (Connolly, J.), entered February 12, 2009 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of the Department of Health denying petitioner's chlorination waiver request.

Dating back to the early 1970s, petitioner—the operator of a public water system in the Town of Bethpage, Nassau County—was consistently granted waivers by the Nassau County Department of Health (hereinafter NCDH) from the State Sanitary Code requirement of disinfecting its groundwater supply through chlorination (*see* 10 NYCRR 5-1.30 [a], [e]). In 2007, to protect the public from biological terrorism, NCDH adopted a policy which would disallow any waivers for public water systems serving communities with populations larger than 3,300 people. As a result, when petitioner—which serves over 3,300 people—applied for a chlorination waiver for the years 2008 to 2011, NCDH denied the application.

In February 2008, petitioner commenced a proceeding against NCDH and the Department of Health (hereinafter DOH) challenging the denial of its waiver application on the basis that NCDH lacked authority to deviate from the six criteria listed in the Sanitary Code for making waiver determinations (*see* 10 NYCRR 5-1.30 [e]). Subsequently, a stipulation of discontinuance was entered into by all parties with a provision that NCDH would forward petitioner's waiver application to DOH for it to review and determine. After DOH concluded that it was within NCDH's authority to supplement the Sanitary Code criteria for a chlorination waiver with additional requirements, petitioner commenced this combined CPLR article 78 proceeding and declaratory judgment action alleging, among other things, that NCDH's waiver criteria were preempted by state law. Supreme Court dismissed the petition/complaint against respondent Commissioner of Health (hereinafter Commissioner) on the ground that petitioner lacked capacity to sue the state and further held

that NCDH possessed the requisite authority to add to the chlorination waiver criteria found in the Sanitary Code. On petitioner's appeal, we now affirm.

Initially, we agree with Supreme Court that petitioner's claims against the Commissioner were properly dismissed because petitioner lacks capacity to bring suit against the state. Municipal entities such as petitioner generally "cannot contest the actions of the state which affect them in their governmental capacity or as representatives of their inhabitants" (*Matter of County of Oswego v Travis*, 16 AD3d 733, 735 [2005]; *see New York State Assn. of Small City School Dists., Inc. v State of New York*, 42 AD3d 648, 649 [2007]). We hold—and petitioner does not directly dispute—that DOH's action here directly affects petitioner in its governmental capacity because the administration of chlorination waivers is inextricably related to the health, safety and welfare of the community (*see County of Nassau v South Farmingdale Water Dist.*, 62 AD2d 380, 390 [1978], *affd* 46 NY2d 794 [1978]; *St. Andrew v O'Brien*, 45 AD3d 1024, 1026-1027 [2007], *lv denied and dismissed* 10 NY3d 929 [2008]; *Matter of County of Oswego v Travis*, 16 AD3d at 735; *cf. D & D of Delhi, Inc. v Village of Delhi*, 47 AD3d 1117, 1118 [2008]). Hence, unless petitioner can demonstrate that one of the recognized exceptions to the rule exists, it lacks legal authority to commence a suit against the state.

Petitioner argues that it has "an express statutory authorization to bring such a suit," creating an exception (*City of New York v State of New York*, 86 NY2d 286, 291 [1995]).[1] Specifically, petitioner relies on the fact that its Board of Commissioners is authorized by statute to "sue and be sued" (Nassau County Civil Divisions Act § 255.4 [L 1939, ch 273, as added by L 1949, ch 270])—authorization made necessary because municipal entities like petitioner have no inherent right to sue; "their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory precedent" (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 156 [1994]). However, a statutory grant of a gen-

---

1. The four exceptions are: "(1) an express statutory authorization to bring such a suit; (2) where the [s]tate legislation adversely affects a municipality's proprietary interest in a specific fund of moneys; (3) where the [s]tate statute impinges upon 'Home Rule' powers of a municipality constitutionally guaranteed under article IX of the State Constitution; and (4) where 'the municipal challengers assert that if they are obliged to comply with the [s]tate statute they will by that very compliance be forced to violate a constitutional proscription' " (*City of New York v State of New York*, 86 NY2d at 291-292 [citations omitted], quoting *Matter of Jeter v Ellenville Cent. School Dist.*, 41 NY2d 283, 287 [1977]).

eral right to sue such as this "is insufficient to imply authority to bring suit against the state itself" (*Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs.*, 7 AD3d 934, 935 [2004], *affd* 5 NY3d 36 [2005]; *see City of New York v State of New York*, 86 NY2d at 293). Further, petitioner's contention that its right to sue the state is inferable from its "statutory functions or responsibilities," by virtue of the fact that it enjoys a general right to sue, is unpersuasive (*Matter of Graziano v County of Albany*, 3 NY3d 475, 479 [2004]).

Indeed, petitioner acknowledges some limitation on its capacity to sue the state, but argues that its capacity is only restricted in suits challenging state legislation or "other [s]tate action that affects or restricts" its municipal powers. We previously have held that a municipality lacks the capacity to challenge a state agency's interpretation of statutes and regulations where, as here, the result impacts the municipality in its governmental capacity (*see City of Utica v Daines*, 53 AD3d 922, 923-924 [2008]; *Matter of County of Oswego v Travis*, 16 AD3d at 735). Petitioner's reliance on several cases where municipalities have successfully challenged state action and the issue of capacity was not addressed is misplaced. As it is not a jurisdictional defect, unless capacity is raised as a defense, as it was here, it will not prevent a court from reaching the merits (*see* CPLR 3211 [a] [3]; [e]; *City of New York v State of New York*, 86 NY2d at 292).

Turning to petitioner's claim against NCDH, we are unpersuaded that NCDH's regulation of chlorination waivers is preempted by Public Health Law § 1100. Preemption occurs "in cases of express conflict between local and [s]tate law and in cases where the [s]tate has evidenced its intent to occupy the field" (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989]; *see Matter of Village of Lacona v New York State Dept. of Agric. & Mkts.*, 51 AD3d 1319, 1320-1321 [2008]). Here, NCDH's additional criterion does not conflict with the existing criteria for obtaining a chlorination waiver. The relevant regulation in the Sanitary Code provides that the Commissioner (or his or her designated representative) "*may* grant a waiver" upon a public water system meeting the six requirements found in the Sanitary Code (10 NYCRR 5-1.30 [e] [emphasis added]; *see* 10 NYCRR 5-1.1). As such, NCDH, as the designated representative for DOH, is not required to grant the chlorination waiver every time a particular applicant meets all of the criteria in the Sanitary Code. Moreover, more stringent sanitary standards are not considered inconsistent with the existing Sanitary Code (*see Matter of Bri-Mar Corp. v Town Bd. of Town of Knox*, 74 NY2d 826, 827-828 [1989]).

Petitioner asserts instead that preemption exists because DOH has exclusive authority to regulate the public water supply (*see* Public Health Law § 1100). Public Heath Law § 1100 gives DOH broad authority to protect "public supplies of potable waters and water supplies of the state or United States, institutions, parks, reservations or posts and their sources within the state" (Public Health Law § 1100 [1]; *see* 10 NYCRR parts 100-157; *Matter of Thompson Water Works Co. v Diamond*, 44 AD2d 487, 491 [1974]).[2] However, although the statute addresses DOH's authority in making rules and regulations for public water supplies and their sources, it does not expressly cover public water systems, such as that at issue here.[3] As chlorination is treatment of the water system, rather than the supply, Public Health Law § 1100 is not relevant (*see* 10 NYCRR 5-1.30).

Further, Public Health Law § 228 expressly permits counties, cities and towns to "enact sanitary regulations not inconsistent with the sanitary code" (Public Health Law § 228 [2]). Public Health Law § 347 also states that each county health board may "formulate, promulgate, adopt and publish rules, regulations, orders and directions for the security of life and health in the health district which shall not be inconsistent with the provisions of this chapter and the sanitary code" (Public Health Law § 347 [1]; *see Suffolk County Bldrs. Assn. v County of Suffolk*, 46 NY2d 613, 618 [1979]). Thus, NCDH is not precluded from supplementing the criteria for chlorination waivers but, rather, is expressly authorized to do so.

Accordingly, Public Health Law § 1100 does not preempt

---

**2.** This statute further grants to the New York City Commissioner of Environmental Protection and the Board of Water Supply in New York City the right to make rules and regulations regarding the protection of said water sources and supplies, subject to DOH approval (*see* Public Health Law § 1100 [1]; *Matter of Town of Hunter v City of New York*, 46 AD3d 1197, 1198 [2007]; *see also Ryder v City of New York*, 32 AD3d 836, 838 [2006], *lv dismissed* 8 NY3d 896 [2007]; *City of New York v Mancini-Ciolo, Inc.*, 188 AD2d 633, 634 [1992]).

**3.** The Sanitary Code defines a "public water system" as a "water system which provides water to the public for human consumption through pipes or other constructed conveyances" (10 NYCRR 5-1.1 [ay]) and a "source of water supply" as "any ground water aquifer or watercourse from which water is taken either periodically or continuously for drinking, culinary or food-processing purposes" (10 NYCRR 5-1.1 [bj]). Further, an Attorney General Opinion regarding the precursor to Public Health Law § 1100 (*see* Public Health Law former § 70) stated that a municipality may make regulations regarding the "construction and preservation of the water works system" while the Commissioner has the exclusive power to create regulations regarding "the protection [of] the reservoirs or sources of supply from contamination" (1906 Ops Atty Gen 628).

NCDH from supplementing the requirements of the Sanitary Code concerning chlorination waivers, and the petition was properly dismissed.

Rose, Lahtinen, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.